## GIBSON *vs.* BROCKWAY.

A plea of *nul disseizin* admits that the tenant is in possession, claiming adversely to, and that he has disseized the demandant.

A conveyance with a description as follows, viz. " A certain tenement, being one half of a corn mill, situated in Washington, in lot No. one, with all the privileges and appurtenances," conveys not only the mill, but the land on which it is situated, together with such portion of the water privilege as is essential to the use of the mill.

THIS was a plea of land. The demanded premises were described as being part of lot No. one, in the first range and second division of lots in Washington, and were particularly set out by metes and bounds.

The plea was *nul disseizin*, which was joined.

It was admitted that Joseph Bailey was the original owner of the premises described in the plaintiff's writ, and that there was a dam, a corn-mill and a saw-mill on the premises at that time.

The plaintiff then offered a deed from Joseph Bailey to Thaddeus Graves, dated May 25, 1802, conveying " A cer- 'tain tenement, to wit. : one half of a corn-mill, situated 'in Washington, in the county of Cheshire, in lot number 'one, and second division, with all the privileges thereto 'belonging, the same as I now possess, with a full privilege

' to pass and repass to and from the mill to the road, for ' himself and his customers, to have and to hold the same, ' with all the privileges and appurtenances," &c.

Also a deed from Thaddeus Graves to the plaintiff, dated the 16th of October, 1829, conveying to him the same premises.

The defendant contended that these deeds being a conveyance " of one undivided half of a corn-mill," conveyed merely one undivided half of the building, but no portion of the land; and as the building had been swept away by a freshet, that the plaintiff's interest was lost. The plaintiff contended that the conveyance of one half the corn-mill, with the privileges, conveyed the land used in connexion with, and for the purposes of, the mill, and offered Thaddeus Graves as a witness to testify as to the extent of the mill privilege, or the privileges connected with the mill conveyed as aforesaid.

Said Graves testified that about two acres of the tract of land described in the plaintiff's writ was flowed by water for the use of the mills; that a portion of the remainder was occupied for the use of the saw-mill, and a part was in cultivation by the other owner, and that the only portion of this tract used by him, except what was flowed as aforesaid, was for the purpose of passing to and from the mill; that the land connected with said mills as aforesaid was about four acres, and that in August, 1826, the dam and mills were carried away by a freshet: That after they were carried away he applied to Jonathan Brockway, who then owned the remainder of the premises, to unite with him in rebuilding the corn-mill—but he refused to build with the witness, and denied any right of the witness in the premises: That afterwards, on the 16th of October, 1829, the witness conveyed his interest to the plaintiff, and subsequent to said conveyance, in 1830, Brockway erected a new corn-mill upon the former site of the old mill, and has, together with his grantees, including the present defendant, since occupied and

improved the same, and the privilege connected therewith, to the present time.

The defendant contended that this testimony shew no disseizin of the plaintiff.

A verdict was taken, by agreement, for the defendant, subject to be set aside and a verdict entered for the plaintiff, for such portion of the premises described as the court might direct.

*Handerson,* for the plaintiff. The question in this case is, What ground is covered by the plaintiff's title ? What, if any thing, is he entitled to recover?

The defendant contends, that the deed to Graves conveyed no interest in the land, but merely the corn-mill, and when that mill was washed away the plaintiff's interest ceased.

Our view of the matter is, that the conveyance of the corn mill, with its privileges and appurtenances, conveyed not only the mill itself, but the land on which it stood, with the land where the dam stood, and the land covered with the mill-pond, as it existed at the time of the conveyance to Graves. Such, we think, must have been the intention of the parties ; and it is a well settled rule of law, that every deed ought to be construed, if it be legally possible, so as to effect the intention of the parties. 4 *Mass.* 136, *Wallis* vs. *Wallis ; ibid* 205, *Worthington* vs. *Hylyer ;* 9 *Mass.* 518, *Davis* vs. *Hayden & al. ;* 3 *Johns.* 395, *Jackson* vs. *Myers ;* 4 *Dallas* 347 ; *Shep. Touch.* 86—88.

There can be no doubt, I apprehend, that a deed executed to convey real estate, and purporting to convey a dwelling-house, a corn-mill, or any other building, conveys the land on which such building stands ; and it seems to me that the mill-dam and mill-pond are to be considered parts of the mill, and pass with it as parts of the soil and freehold conveyed. The floom that conveys the water to the wheel is as much a part of the mill as the wheel ; and the wheel

is useless without a dam and pond of water. It does not seem to me that these are things considered as appurtenances; they are not things appertaining to the mill, but are parts of the mill—parts of the thing conveyed. It could not have been within the contemplation of the parties, that Bailey was conveying to Graves the building merely that was called a grist-mill or corn-mill, but that he conveyed also a dam and water,—things necessary to make it a corn-mill, and without which it could not properly be called by that name. Perhaps the right of way to pass and repass might be considered an appurtenance only, or an easement; and as regards that, the right of soil may not have been conveyed. In support of these views he referred to *Shep. Touch.* 90—92; 4 *Com. Dig.* 312, *Grant, E*, 5; *ib.* 314; 2 *Roll. Ab.* 60; 7 *Mass.* 8, *Leonard* vs. *White; Co. Litt.* 5, 6; *Co. Litt.* 5, *a; Cro. Eliz.* 521, 522; 5 *Coke's Rep.* 11, *Ives' case;* 4 *N. H. R.* 21, *Webster* vs. *Atkinson;* 9 *Johns.* 298; *ibid* 377; 3 *Johns.* 395.

In regard to the question whether an ouster was proved, it seems that between tenants in common, when the general issue of *nul disseizin* is plead, proof of actual ouster is not necessary. 5 *Mass.* 351; 1 *Pick.* 318—328; 4 *Johns.* 312; 11 *Johns.* 463.

But however this may be, here was an actual ouster, if any thing done by one tenant in common can amount to an ouster. The defendant and his grantors have not merely taken the rents and profits, as one tenant in common may do, but after the mill, which was the subject of the profits, was carried off, the defendant's grantor refused to let the plaintiff join with him in rebuilding, and rebuilt himself, denying that the plaintiff had any right or interest there; and he and the defendant have held and occupied exclusively to their own benefit, under a claim of sole seizin, and refused the plaintiff any participation in the use and occupation. This surely is an ouster—a disseizin of the plaintiff. We claim an undivided half of the mill, dam

and mill-pond, to hold the same in common with the defendant.

*Hubbard & Gilchrist*, for defendants.   1. The deed, Bailey to Graves, of May 25, 1802, conveyed no interest in the land. *Thompson* vs. *Prop. of And. Br.*, *5 Green.* 62; *Withington & al., ex'rs*, vs. *Aylyer & al.*, *4 Mass.* 199. *Arguendo*, that a grant of buildings does not affect the conveyance of the land on which they stand. *Leonard* vs. *White*, *7 Mass.* 6; *Taylor* vs. *Hampton*, *4 McCord.* 92; *Whalley* vs. *Nurton*, *1 Bos. & Pul.* 52. See, also, *Darling* vs. *Crowell*, *6 N. H. R.* 421.

2. If the conduct of Jonathan Brockway amounted to a disseizin of Graves, it is difficult to see on what principle the deed of Graves to this plaintiff, of October, 1829, could convey any interest. The court, in *Willard* vs. *Twitchell*, *1 N. H. R.* 178, consider the law as settled in that case, " deeply to be regretted." It conflicts with the law as settled in *2 Bl. Com.* 290; *3 Mass.* 574; *5 do.* 276; *6 do.* 241; *14 do.* 200; *5 Pick.* 355; *13 do.* 152; *5 Johns.* 489, 500.

The opinion of the court was delivered by

UPHAM, J.  An exception was taken on trial, that there was no evidence of a disseizin by the defendant; but the general issue which is plead in this case is a denial of record of the plaintiff's right to recover any part or parcel of the premises, so that the pleadings are fatal to this exception.

The only question to be determined in the case, is whether the deed under which the plaintiff claims, passes the buildings merely, or the land on which the same were situated, with such adjoining land as may be essential for their use and improvement.

Conveyances are most usually by metes and bounds of land, with the additional description, where buildings are upon the premises, of the phrase, "with the buildings

thereon ;" but this addition is immaterial.    A conveyance of the land passes the buildings, of course.

But land will also pass by other terms of description. Thus a conveyance of a messuage, a rectory, a house, &c. will in many instances convey land.

In *Shepard's Touchstone* 94, it is said that " the grant of ' a messuage, or a messuage with the appurtenances, passes ' the house and building adjoining, together with the close ' upon which the dwelling-house is built, and the little gar-' den, yard, field, or piece of void ground lying near, and ' belonging to the messuage.    And so much also may pass ' by the grant of a house."

Coke says : " By the grant of a messuage, or house, the ' orchard, garden and curtilage do pass, and so an acre or ' more may pass by the name of a house."    *Co. Litt.* 216.

The grant of a *cottage* will pass a little dwelling-house, that has no land belonging to it.    *Shep. Touch.* 91.    A cottage is a little house without land.    *Co. Litt.* 216.

In *Doe* vs. *Collins*, 2 *D. & E.* 499, a devise " of the *house* I live in, and garden, to B," was held to include the *stables*, and the land on which they stood, and a coal pen which was on the opposite side of the way, and separated by the road.    Ashurst, J., said—" The distinction betwixt a ' house and a messuage seems to be too subtle to be relied ' upon at this time ; for he thought whatever would pass by ' the one would pass equally by the other."    See, also, 2 *Saund.* 401, *Smith* vs. *Martin, and authorities there cited.*

*Blake & al.* vs. *Clark*, 6 *Green.* 436, is a case directly in point.    It was there holden that the conveyance of a *saw-mill* conveyed *the fee of the land* on which the mill stood, and that the land on which a mill stands may be regarded as including land over and upon which the slip, if it has one, or any other necessary projection from the mill, passes, and that the term may also embrace the free use of the head of water existing at the time of the conveyance, as also

a right of way, or any other easement which has been used with the mill, and which is necessary to its enjoyment.

We are of opinion that the description in the plaintiff's deed must go to this extent at least. The terms used in the conveyance here are much stronger than those in the case last cited.

Tenement is a large word to pass not only lands, and other inheritances which are holden, but also offices, rents, commons and profits arising from lands. 1 *Co. Litt.* 219; *Shep. Touch.* 91.

With us the word tenement is applied exclusively to land, or what is usually denominated real property. *Stearns on Real Actions,* 150.

The description used in the conveyance in this case, is : " A certain tenement, *to wit. :* one half of a corn-mill, situ-' ated in Washington, in the county of Cheshire, in lot No. ' one, and second division, with all the privileges thereto ' belonging, the same as I now possess." The design was, without doubt, to pass, under the phrase, " a certain tene-ment, being one half of a corn-mill," the land on which the same was situated, together with that portion of the water privilege which was essential to the use of the mill ; and such is the proper legal effect of the terms made use of.

Independent of the word *tenement,* there is sufficient in this description to convey the land connected with the mill. The term messuage, house and mill, will often include land if not necessarily so, unless there is something in the con-veyance to rebut such a presumption. In this case each portion of the description corroborates the construction e give to it, and makes it an undoubted conveyance of land and buildings. The verdict must, therefore, be set aside, id

*Judgment rendered for the plainti*