NelsON, J.,
delivered the opinion of the Court.
The parties own adjoining lots in the town of Bolivar, and the object of the proceeding is to compel defendant, under the provisions of the Code, ss. 1682-1694, to pay one-half of the expenses incurred by the plaintiff in causing to be built a partition or division fence on their dividing line. The parties failing to agree, an order was issued by a Justice to three freeholders to examine the fence and report to him, under oath, the amount to be paid to the owner erecting it, pursuant to the Code, s. 1688. Under the agreement as to notice contained in the record, it may be assumed that the freeholders proceeded to examine the fence and to make their report to the Justice, as required by section 1689. They reported that the fence was *477 two hundred and forty feet long and cost sixty dollars, and that Mrs. Grove should pay half that amount; and the money not having been paid within ten days thereafter, the Justice proceeded to enter up judgment against her for thirty dollars and costs as directed in section 1690. From this judgment Mrs. Grove prosecuted an appeal to the Circuit Court of Hardeman, where the case was submitted to a jury, who rendered a verdict in her favor; and from the judgment thereon the plaintiff prosecutes this appeal.
Several questions have been presented in argument before this Court.
1. It is insisted that the action of the Justice is ministerial or clerical only in such eases; that the decision of the commissioners was final, and that no appeal to the Circuit Court was contemplated by or could be granted under the statute. We do not concur in this view. The Code, s. 3140, gives the right of appeal to any person dissatisfied with the judgment of a Justice in a civil action. Section 4177 provides that no civil case, originating before a Justice of the Peace and carried to a higher Court, shall be dismissed for any informality whatever, but shall be tried on its merits. One of the earliest definitions of an action was, that it is “the lawful demand of one’s rights:” 3 Sharsw. Bl. Com., 116, m. The Code, in defining the jurisdiction of Justices, and after enumerating the various special matters to which it shall extend, declares that it shall extend “to all other cases where jurisdiction is, or may be, expressly given by law:” See section 4123, sub-sec. 10. The particular mode *478 of exercising this jurisdiction is defined in sections 1688 and 1689, and the latter section declares that if the amount directed by the freeholders to be paid the person erecting the partition fence, is not paid within ten days thereafter, the Justice shall enter up judgment and issue execution for the same. The whole proceeding is judicial and not ministerial, and may be regarded as a civil action within the meaning of the Code, just as well as a motion was declared to be an action within the meaning of the acts of 1823 and 1827: See Banks v. Brown, 4 Yerg, 198. Jurisdiction to try contested elections for Justices of the Peace and Constables was conferred on the County Court by the act of 1852, c. 54, and no right of appeal was conferred in express terms by the statute, yet it was held in Dodd v. Weaver, 2 Sneed, 671, that upon general principles, the right existed. We do not think it necessary to review the case of Wade v. Murry, 2 Sneed, 50, to which we have been referred, and in which it was held that the act of 1854, c. 32, created a special tribunal for the trial of contested elections of Judges and Attorneys-General, and that no appeal could be prosecuted from its decision: lb., 54-56. The decision in that case seems to rest upon grounds of public policy inapplicable to a case like this. And since that decision was pronounced, it was enacted in the Code, s.- 3159, that “ any one or more of the parties to a judgment or decree, may pray and obtain an appeal therefrom, the judgment remaining in full force as to the parties who do not appeal.” That section is placed in art. viii, under the title “general *479 provisions touching appeals,” and applies as well to judgments rendered by Justices as by Courts of Record; and, as the defendant was a party to a judgment, she was undoubtedly entitled to an appeal, and there was no error in the refusal of the Circuit Court to sustain the motion for an affirmance of the judgment. Under this section, the appeal brought up the whole case, and there was no error on the part of the Circuit Court in causing it to be tried by a jury.
2. His Honor charged the jury that “if they found the partition fence, built by the plaintiff, was within the corporate limits of Bolivar, they would find for the defendant.” Although the amount in controversy, in this case, is small, the question arising upon his Honor’s charge is an important one. In the chapter of the Code which relates to enclosures and partition fences, it is declared that “partition fences, within the meaning of this chapter, are fences erected on the line between lands owned' by different persons.” If the word “lands” is here used in its largest signification, there can be no question as to its embracing town lots as wTell as lands situated elsewhere. It was, certainly, not the intention of the Legislature in the use of the word lands, to employ it in its full legal signification, which comprehends not only the soil, but any building upon it, and “includes not only the face of the earth but every thing under it or over it:” 2 Sharsw. Bl., 18, marg. The meaning is to be ascertained by looking to the preceding sections of the Code, which embody the provisions of the act of 1807, c. 8, Car. & Nich., 332. Section 1682, which is the first *480 section relative to fences, declares that “every planter shall make a sufficient fence, about his cleared land in cultivation, at least five feet high, and so close from the surface of the earth, as to prevent hogs from passing through the same,” and the subsequent sections, relate to trespasses committed by horses, cattle, or hogs, on the cleared and cultivated ground of any person, the assessment of damages, the joining of fences, etc. It is manifest that the statute relates only to agricultural lands, owned or used by farmers, or planters, and that the fences provided for are what are usually denominated “ stock fences,” situate in rural districts. The statute does not relate to lots situate in towns or cities, and which are usually separated by party walls or more costly fences. At common law, the tenant of a close was not bound to fence against an adjoining close unless by force of prescription, and if bound by prescription to fence his close, he was not bound to fence against any cattle but such as were rightfully in the adjoining close, although he was bound at his peril, to keep his cattle on his own grounds and prevent them from escaping: See 3 Kent, 438, marg., 6th ed. The legal obligation to make and maintain partition fences, rests entirely on positive provisions by statutes; and, in towns and cities, is controlled by private agreement, municipal regulations, and principles applicable to servitudes and easements not necessary to be here stated or discussed.
3. It was shown upon the trial, that the plaintiff agreed with the son and agent of the defendant, that if he would extend the fence to another part *481 of the land, this should be an equivalent for the fence built at plaintiff’s expense, and that this was done at or soon after the commencement of this suit. Substantial justice was attained by the verdict, and the judgment is affirmed.