**STATE ex GROSS v BOARD OF DIRECTORS MIAMI CONSERVANCY DISTRICT**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1561. Decided Aug 8, 1941

R. N. & N. K. Brumbaugh, Dayton; Orel J. Myers, Dayton; Sidney G. Kusworm, Dayton. and R. A. Argabright, Dayton, for plaintiff.

O. B. Brown, Dayton; Frank & Thomas, Dayton; L. H. Shipman, Troy; Smith, Schnacke & Compton, Dayton; Schubring, Ryan, Peterson & Sutherland, for defendants.

## OPINION

By HORNBECK, J.

### PLEADINGS AND CLAIMS OF THE PARTIES

Plaintiff, who is the owner of, and pays an annual assessment of benefits otherwise known as the Miami Conservancy tax on, real property located within the confines of The Miami Conservancy District, institutes this action to require the court, by virtue of §6820-40 GC, to mandamus the respondent directors of the aforesaid district to direct the Board of Appraisers of said district to. appraise the benefits or the enhanced benefits received by real property located throughout said district in all cases where it is evident that any person or public corporation is making use of or profiting by the works of said district to a degree not compensated for by the original appraisal of benefits; (This would require the Board of Appraisers to fix and determine the date and amount of additional benefits accruing to every piece of real estate in the district, some 70,000 parcels, which has been enhanced in value by the addition of improvements of any kind or character placed thereon since the original appraisal of benefits made by said appraisers by virtue of §6828-27 and approval thereupon by §6828-33;) and to assess said enhanced benefits upon all of the real property so benefitted, as provided by the terms of §6828-45 GC, and to determine and order an annual levy covering each and every year during which any real property or public corporation has been benefitted to a degree not compensated for by the original appraisal of benefits * * *, as provided by the terms of §6828-50 GC, and further that the respondent Secretary of said district be compelled to prepare all conservancy books or records necessary to set forth the aforesaid appraisals, levy and annual levy as prescribed by the Conservancy Act of Ohio.

It is further averred that the annual levy of benefits known as the Conservancy Tax on the real properties throughout the District is in contravention of Art. XII, ¶2 of the Ohio Constitution and the Fourteenth Amendment to the Constitution of the United States.

The answer of defendants is set forth in two defenses, the first of which after admitting the capacity of plaintiff, the boundaries of the district as in the petition alleged, denies generally that the duty of the Board of Directors under §6820-40 GC is as averred in the petition; denies that there has been any violation of §6828-40 GC; denies the unconstitutionality of the annual levies of conservancy assessments as theretofore made and sets out the proceedings of the Board of Directors incident to appraisal of benefits to lands within and without the district and denies each and every other allegation of said petition.

The second defense sets up seriatum the proceedings establishing the Miami Conservancy District, the creation of a plan for the improvements for which said district had been created, the adoption of the plan known as the

"Official Plan of the District", its approval by the Conservancy Court on November 24, 1916, and thereafter the various steps taken by the Board of Directors and the Appraisers to fix the benefits of every kind to all real property within and without the district, all damages sustained and all benefits and damages accruing to public corporations, the fixing of the benefits and damages and the levy of an assessment thereunder, the issuance of bonds in anticipation of the collection of the installments or levies, the acceptance from numerous owners of payment in full of their levies of assessments on their lands and the approval of the court of the findings and appraisals of benefits to all of the real property and public corporations upon which benefits were appraised and asserts that by the approval thereof, as in the second defense set forth, such appraisals have become final and incontestable and res adjudicata as to the benefits which permanently accrued to all the said real property and public corporations as between the district, its officers and directors, and the owners of said real property and public corporations against which said findings, appraisals and assessments have been made, and as to said owners of real estate and public corporations among themselves.

Thereafter defendants filed an amended answer in which there is set forth a third defense of laches on the part of the respondents and a fourth defense of the Statute of Limitations.

Plaintiff replies to the answer admitting certain facts averred but denying all matter in variance with the allegations of the petition.

We will hereafter, in referring to the Act, mention section numbers only. In defining the meaning of the law as to the sections especially under consideration, it becomes germane to consider the whole act in the light of the purposes to be accomplished by the legislation, its practical application to the territory incorporated within the Miami Conservancy District, the equities to be accorded to the owners of lands in the district, who have been and are being assessed to pay the original cost of the improvement and to maintain it in operation. All of these matters have been included within the scope of the briefs of the parties.

### GENERAL CLAIMS.

The theories of the respective parties are well defined. Upon the part of the plaintiff, it is his basic contention that the assessments originally levied upon owners of the lands beneficially affected by the improvements have, by reason of changed conditions and enhanced values of said lands, brought about by the improvements placed thereon, become inequitable and unjust.

Illustrative of this claim, there is set forth in the petition and made the subject of stipulation of facts No. 20, certain well known properties in the city of Dayton which are divided into two groups. In the first group are the Gibbons Hotel, Miami Hotel, Kuhns Building, Adam-Schantz Building, all of which were at the time of the original appraisal of the lands of the district improved real estate and their tax valuation fixed accordingly. In the second group, there is found the Biltmore Hotel, the Van Cleve Hotel, Harries Building, Gas & Electric Building, Refiners Building, Ohio Bell Telephone Building, Winters Bank Building, Third National Bank & Trust Co., Third National Building, which likewise were appraised for benefits upon the tax valuation as set forth at the time of the original appraisal; that extended and very valuable improvements have been erected upon these properties since the appraisal. It appears that the special assessment against the properties in the first group are much higher than upon the second group upon their respective tax valuations as appearing in the year 1937 which is used for the purpose of the illustration.

It is obvious that there is marked difference in the amount of assessments levied against those lands upon which improvements have been completed or

added since the original assessments in the district as compared to the lands upon which the buildings were standing at the time of said assessment. These differences present an impelling reason why this court should, if permissible under the Conservancy Act, make some order which would have as its effect the equalization of the manifest disparity between these assessments as viewed upon present conditions and values.

It is the basis of the claim of plaintiff that it is the intendment of the Conservancy Act, as found in the letter of §§39 and 40 that the Board of Directors take cognizance of these enhanced values accruing to lands in the district, appraise the amount and the extent thereof and levy assessments on the owners of the real estate upon which the improvements have been erected in parity with the original assessments on lands in the district.

On the other hand, it is the theory of defendants that the Conservancy Act in its entirety evinces a distinct purpose to confine the assessments to be levied against the real property within the Conservancy District to the benefits resulting to said property with the improvements thereon by reason of the carrying out and completion of the "Official Plan" as promulgated by authority of the act and approved by the Conservancy Court; that these benefits are to be determined as of the date when the original appraisals are approved by the court; that by virtue of the act itself each appraisal therein provided when completed and approved becomes final and incontestable. (Sec. 33).

## THE CONSERVANCY ACT.

We, briefly as possible, discuss some of the provisions of the act as they may reflect some light upon the narrower question presented upon issues joined.

It is a familiar principle in levying special assessments upon real property to pay for street and like ██ improvements that the assessment is fixed by the status of the property at the time of the passage of the ordinance to improve. **Douglass v Cincinnati, 29 Oh St 165, Sandrock v Columbus, 51 Oh St 317, Shiner v Norwood, 17 O. C. C. 631, Metcalf v Carter, 19 O. C. C. 196.** It follows that the determination of the extent of the benefits, the basis of the levy of assessments on said lands must be determined upon them in their existent condition, as of a date fixed, prior to the levy of any assessment against them. This appears to be the plan upon which the Conservancy Act was drawn.

After the district is organized and the Board of Directors named, it is provided in §12 that,

"The Board shall cause to be prepared a plan for the improvements for which the district was created.",

which creation, by court decree, was for the prevention of floods in the valley of the Great Miami River and its tributaries. This plan was comprehensive and included maps, profiles, plans and other data and descriptions necessary to set forth properly the location and character of the work, and the property benefitted or to be taken or damaged, with estimates of costs and specifications for doing the work. After due notice of the completion of the plan had been given, as provided, the Board is directed to adopt it as the Official Plan of the District. The section concludes as follows:

"The Official Plan may be altered in detail from time to time until the Assessment Roll is filed, and of all such alterations the appraisers shall take notice. But after the Assessment Roll has been filed in court no alterations of the Official Plan shall be made except as in §37 hereof provided."

No attention need be given to §37 because the stipulation of facts (No. 16) indicates that there was no change in the Official Plan as duly approved by the Conservancy Court on November 24, 1916.

Section 13 vests the Board of Directors with full power and authority to carry out and complete the Official Plan in all particulars.

Section 26 provides for the appointment of three appraisers and defines their duties.

Section 27 provides for appraisals and enjoins upon the Board of Appraisers the obligation to "appraise the **benefits of every kind to all real property** within or without the district, which will result from the organization of said district and the execution of the Official Plan", and also, "to appraise the benefits and damages, if any, accruing to cities, villages, counties, townships and other public corporations, **as political entities,** and to the State of Ohio." (Emphasis ours). Obviously, for the purposes of this section, the only benefits accruing to the lands to be appraised by reason of the execution of the Official Plan were those which were susceptible of determination as of the time when they were originally appraised.

This appraisal of benefits is all inclusive and is defined as being of every kind which will result from the execution of the Official Plan. It was the purpose of this provision that, when the appraisers had acted ▆▆▆▆▆▆ ▆ under the aforesaid authority, they had determined all benefits which it was contemplated under the act would accrue to all real property and public corporations, as entities, affected by the organization of the Miami County Conservancy District and the execution of the Official Plan. No other or further benefits than those envisioned by that portion of §27, which we have heretofore quoted, were to be considered as subject to the payment of the cost of the improvement.

Section 28 authorizes the appraisers to appraise the benefits and damages to any land or other property not embraced within the boundaries of the district if they are affected by the proposed improvement.

Section 30 provides that the Board of Appraisers shall prepare a report of its findings in book form known as The Conservancy Appraisal Record to be deposited with the Clerk of the Court and filed in the original case.

After notices of hearing on appraisals, and hearing on appraisals, §33 provides for the decree of the Conservancy Court on the appraisals as proposed by the Board of Appraisers. As a basis for the approval of the Court, it must be found "that the estimated cost of constructing the improvement contemplated in the Official Plan is less than the benefits appraised", and when so found and determined, "such findings and appraisals shall be final and incontestable". That is to say, that the findings and appraisals as ▆▆▆▆▆▆ ▆ to benefits accruing to lands affected by the execution of the Official Plan including the benefits to such lands and the extent thereof were, when approved by the court, fixed, final and incontestable. They may not later, in respect to that plan, be increased nor diminished. It is from these benefits that the project is to be paid for and they only may be drawn upon by levy for that purpose.

In the instant case there is no question but that the lands of the relator and the lands of others to which the attention of the court is especially directed by the petition were appraised by the Board of Appraisers, the benefits and the extent thereof resulting from the execution of the Official Plan determined and such findings approved and confirmed by the Conservancy Court.

### SECTIONS 39 and 40.

Quoting from the brief of the plaintiff, the questions for determination are,

"(1) Do §§6828-39 and 6828-40 GC require appraisal of the benefits from time to time as it becomes evident to the Board of Directors that the condition of any real property in the district has changed to an extent that the owners of such property are profiting by or making use of the works of the District to a degree not compensated

for by the original appraisal of benefits?

(2) Have such changes in condition occurred and are the same evident to the Board of Directors?

Plaintiff cites §6828-1 GC defining land for the purposes of taxation and §5322 GC defining real property to the effect that,

"The terms 'real property and land' as so used include not only land itself, whether laid out in town lots or otherwise, * * *, but also, unless otherwise specified, all buildings, structures, improvements, and fixtures of whatever kind thereon, * * *."

From these definitions is drawn the proper conclusion that all buildings, structures, improvements and fixtures which have been erected upon the lands and lots within the Conservancy District may be included and considered as land or real property, as those terms are employed in the Act.

From the general interpretation of the Act, insofar as we have heretofore considered it, it becomes plain that unless §§39 and 40 by specific terms require an affirmative answer to the claim as made and set forth by counsel for the plaintiff, he may not be entitled to the relief sought.

The petition pleads §40 only as being the basis of the relief sought but the briefs of both parties also consider §39, as having some bearing upon the rights of plaintiff. Sec. 39 provides:

"LANDS EXEMPT AND LATER LIABLE TO ASSESSMENTS:—If any lands in any district organized under this act are not liable for taxation or assessment at the time of the execution of the work, but afterwards, during the period when such work is being paid for, become liable to taxation or assessment by reason of some change in condition or ownership, such lands shall thereupon be appraised and assessed as other lands in said district receiving equal benefits."

It is the claim of relators that the improvements placed upon lands orig-inally assessed since that date represent a "change of condition" of such lands which requires that they be reappraised and reassessed.

It is our judgment that this Section refers only to lands, including improvements thereon, in ▮▮▮▮▮ the district, which at the time of the execution of the work, were not liable for assessment but afterwards became liable as in the section provided. The "change in condition or ownership" relates to a change in ownership or change in condition which makes the real estate subject to appraisal and assessment, whereas it was not so subject in any particular at the time of the execution of the work. It does not include any lands which have been the subject of appraisal and assessment.

It is the claim of plaintiff that the phrase "during the period when such work is being paid for," means the period during which the bonds issued by reason of the improvement are being paid. Defendants contend that it means the period prior to the full payment to the contractor or those who do work under the Official Plan. In our opinion, it means during the period when the levy of assessments for the payment of the improvement are being paid. The expressions "The time of the execution of the work," and "when such work is being paid for", are practically synonymous, if given the interpretation claimed by defendants. Inasmuch as the section refers to the assessing of lands, which at the time of the original appraisal were exempt, it is only reasonable to so construe the section, if possible, that such lands, if they eventually become liable to appraisal, may be so appraised at any time prior to the final payment for the work. The meaning of this language is not vital to the controlling question in this case.

The heading upon this section, namely, "Lands Exempt and Later Liable to Assessment" comports with our determination of its meaning, viz., that it relates to lands that were at one time exempt from assessment. The lands which relator seeks to have reap-

praised were never exempt from assessment. The heading, of course, is not controlling but it lends some support to the intendment of the section. The term "change in condition" as found in the section is not so definite as to exclude the meaning ascribed to it by plaintiff, but taken in connection with all of the section, we believe that it is more properly interpreted as we have defined it. It may be said that it is unusual, if the framers of the act had in mind that later assessments were to be made upon lands in the district, if and when improvements were made thereon, that the simple use of the proper terms defining such improvements and the time when they should be appraised would not have been employed.

Section 40 provides:

SUBSEQUENT APPRAISALS:—"(1) In case any **real property** within or without any district is benefited which for any reason was not appraised in the original proceedings, or (2) was not appraised to the extent of benefits received, or (3) **in case any individual, corporation, municipality, political subdivision, or other district shall make use of or profit by the works of any district organized under this act to a degree not compensated for in the original appraisal,** or (4) in case the directors of the district find it necessary, subsequent to the time when the first appraisals are made, to take or damage any additional property, **the directors of said district,** at any time such condition becomes evident, **shall direct the board of appraisers to appraise the benefits or the enhanced benefits received by such property,** or such damages or value of property taken, and proceedings outlined in this act for appraising lands not at first included within the boundaries of the district shall in all matters be confronted with, including notice to the party or parties. Or, the board may, at its discretion, make any suitable settlement with such individual, or other district, corporation, county or municipality for such use, benefit, damage or property taken." (Emphasis and numbering in brackets ours).

It is the claim of the plaintiff that the subject matter in (2) and (3) requires that an appraisal be made of the value of the real property with improvements within the district wherein they have enhanced the value of said property, as fixed in the appraisal made pursuant to the official plan, and that by reason of the additional value of the lands originally appraised, those lands are making use of and profiting by the works of the district to a degree not compensated for in the original appraisal.

It will be helpful to break this section up and to consider three parts as heretofore set out in brackets (1), (2) and (3). So doing, (1) will read, insofar as is necessary to a construction of the Section as follows:

"(1) In case any real property * * * is benefitted which for any reason was not appraised * * *, the directors of said district, at any time such condition becomes evident, shall direct the board of appraisers to appraise the benefits received by **such property.**"

"(2) In case any real property within or without any district is benefitted which for any reason was not appraised to the extent of benefits received, the directors of said district, at any time such condition becomes evident, shall direct the board of appraisers to appraise * * * the enhanced benefits received by **such property.**"

"(3) In case any individual, corporation, municipality, political subdivision or other district shall make use of or profit by the works of any district organized under this act to a degree not compensated for in the original appraisal * * *".

Here in (3), to do that which is applicable to (1) or (2), namely, appraise the benefits or enhanced benefits received by **such property.**

We are satisfied that this section may be construed in conformity to the general purposes of the plan as set out in the Conservancy Act as we have

heretofore interpreted them. So doing, the section has no appli- █ cation to require apprais- als to be made of any of the lands within the district which the petition seeks to have reappraised for the reason that, in completing the improvement of the Conservancy District there was under consideration but one Official Plan and no change whatever made as authorized in §37 of the act. (1) has no application because all of the real property to which the petition is directed was appraised and therefore the extent of its benefits determined as related to the execution of the Official Plan (Stipulation No. 6). (2) There was no necessity for appraisal of enhanced benefits because there was no modification of the Official Plan which would provide a basis for the fixing of enhanced benefits and finally (3) may not be given interpretation which will require us to say that any of such lands to which the petition is directed have made use of or profited by the works of the district **to a degree not compensated for in the original appraisal.**

The subject matter following (1) and (2) and not that following (3) is the basis, if any, for the cleam of plaintiff for the reason that they only refer to "real property" as such.

The difficult part of §40 to interpret is that following (3), not, however, as it affects any of the rights of plaintiff because as we have said before they must be found, if at all, in (1) or (2).

It is probable that that part of the subject matter following (3) has reference to a use or profit by the works of the district in some manner other than is contemplated by the benefits accruing to individuals or entities by reason of the execution of the Official Plan.

This conclusion is strengthened by reason of the fact that the purpose for which the Miami Conservancy District was-organized is only one of six which are set out in §2 of the act. Section 24 relates to water power and supply and provides that,

"Whenever the organization of the district, or the improvements made by it, make possible a greater, better, or more convenient use of, or benefit from, the waters of the district for any purpose, such rights shall be the property of the district and may be leased, sold, or assigned by the district in return for a reasonable compensation."

But this section also protects the rights of land owners, * * * and other users of water to the waters of the district for domestic use, water supply, industrial purposes, for water power or for any other purpose, as were owned by them prior to the organization of the district, and in such use as could be made of such waters if the improvements of the district had not been made. Provision is made for the appraisal of benefits under this section and for the payment of compensation for the **use of the waters** to the district and that the appraisals shall be the basis of future assessment for the **use of the waters** of the district.

It is also pointed out in the brief of defendants and made the subject of stipulations (17 and 18) that certain special uses have been and are being made of the works of the district by agreement between the directors and those so using the works. It is our judgment that the subject █ matter following (3) may not be related to an appraisal of benefits or enhanced benefits accruing to real property, but relate to some use or profit of the works over and beyond that which might be contemplated in benefits received from the execution of the official plan.

The last sentence in the section provides that,

"The Board may, at its discretion, make any suitable settlement with such individual, or other district, corporation, county or municipality for such use, benefit, damage or property taken."

Here is mentioned "individual" and every entity set forth in (3) and provides for settlement by the Board with any of them for the use, benefit, dam-

age or property taken. It is probable that this authority to settle may not relate to benefits which would be appraised and carried into an assessment upon real property because such assessments when made are fixed in character and amount and if the Board was given authority to adjust the amount thereof, it would place such assessments on an entirely different basis than those made under the original plan. This would result in an inequality of assessment.

In any event, it is our judgment that the subject matter following (1) relates to benefits to real property as of the time when the appraisals of such benefits were properly made under the Official Plan and (2) to such appraisals as would be made under a change in the Official Plan, and not to any benefits accruing thereafter. The real property mentioned in the section, as relates to the instant case which would be the subject of appraisal of benefits may include real property embraced within the boundaries of the district, (Sections 3 and 6) which though subject to appraisal, may for any reason have been omitted. But this subsequent appraisal is not to take into consideration the condition or value of the real estate at that time but as of the time when the benefits were assessed in the original proceedings.

## EFFECT OF GRANTING PRAYER OF PETITION.

We give some attention to the practical effect of an order of this court as prayed in the petition as it may be helpful in interpreting the act. Stipulation of fact, No. 15, recites in detail a condition of change in real property included in the Miami Conservancy District as would be expected in rapidly changing territory such as the Miami Valley.

It is agreed that since the time of the approval of the Conservancy Court of the report of the Board of Appraisers, the tax values of thousands of benefitted pieces of property within the district have changed from year to year, both in respect to the land values and in respect to the values of improvements thereon; hundreds of parcels of real estate which consisted of unimproved land at the time of the appraisal for benefits have been improved from year to year by the erection of buildings such as residences, garages, hotels, apartments, office buildings, manufacturing plants, churches, mercantile structures and theaters. Many other properties which had buildings thereon at the time of said appraisal have from year to year become vacant land by reason of the razing of said structures; others, by reason of depreciation, neglect, and changes in the character of their neighborhood. have greatly deteriorated in value so that the improvements thereon, are greatly reduced in value; there have been from year to year changes in the values of properties of the respective political sub-divisions within the district, new streets and roads have been laid out and paved, bridges constructed, deteriorated or destroyed, water mains and sewage systems altered or installed, municipally owned electric and power plants with extensive distribution systems have been erected, altered, modified and improved, so as to greatly change their values; that public records, in various counties within the Miami Conservancy District, that record the time, character and extent of changes affecting general tax valuations of both land and improvements thereon from year to year, have not been adequately preserved since the year 1917. All of this establishes the herculean, if not impossible, task which would be ahead of the Board of Appraisers of the district if a subsequent appraisal was made of lands such as is contended for by the plaintiff.

The plaintiff concedes that the appraisal of benefits as fixed in the original proceedings may not be changed so as to reduce the amount thereof but only to increase it. This involves an obvious inequity and would present a very substantial question, indeed, of the constitutionality of such procedure. The situation thus presented also is

demonstrative of the soundness of the plan of the Conservancy Act as to the time when the appraisal of benefits shall be conclusive upon all properties and entities within the district to be called upon to pay for the cost of the improvement.

In this connection it should be said that weight must be given to the interpretation of the act as made by the Board of Directors of the district.

"Administrative interpretation of a given law, while not conclusive, is, if long continued, to be reckoned with most seriously and is not to be disregarded and set aside unless judicial construction makes it imperative so to do." **Industrial Commission v Brown, 92 Oh St 311.**

The principle is recognized in **State v Ridgway, 73 Oh St 31, State ex rel v Brown, 120 Oh St 73, State ex rel v Hydraulic Co., 114 Oh St 437, State ex Minich v Crabill, 22 Abs 646.**

It is urged by plaintiff that the general plan of appraising benefits as applied in the construction of roads, ditches, sidewalks, streets, etc., may not be given application to the improvement here under consideration because of the more limited life of these other improvements. This is true only as to degree and not on principle. It is true that the works of the Conservancy District are of a permanent nature and will serve the purpose for which they were erected possibly for hundreds of years to come. But it is likewise true that many improvements last far beyond the time of the last payment of assessments levied by virtue of appraisals made according to benefits accruing to the lands involved.

## MAINTENANCE.

The cost of maintenance of the works of this district is substantial and the Conservancy Act definitely sets up the machinery by which this maintenance cost shall be paid. Specific provision is made for the levy of a maintenance assessment (Section 48) and for a petition for readjustment of maintenance assessment (Section 49) in which

latter section cognizance is taken of "material changes in the values of the property in the district since the last previous appraisal of benefits" and authorization provided for a readjustment of the appraisal of benefits upon a more equitable basis. Section 49, setting up, as it does, the complete detailed procedure for readjustment of maintenance assessments, is convincing that, if such readjustment of assessments had been contemplated as to the payment for the cost of the execution of the Official Plan some such detailed procedure would have been outlined in the act.

We have a dearth of opinions upon the immediate question presented in this case. We have found none which was not cited by the briefs and the one which is most nearly in point is Elkins v Millard County Drainage District (Supreme Court, Utah, 1930) 294 P. 307. The third syllabus is,

"Determination of county commissioners equalizing and determining benefits to land within drainage district is final and absolute."

This case presented for the consideration of the court a Drainage Act which in particulars germane to the act which we consider were much alike and the contention of counsel for the plaintiff there was analogous, at least, to that which is asserted here. The court at page 312, said,

"It seems to be the position of counsel for the plaintiffs that under the law as it existed when the defendant drainage district was organized the first assessment of benefits as determined by the board of supervisors and as equalized and fixed by the board of county commissioners was not final, but that such benefits should be determined and equalized annually as the basis for each tax levy. The language of §2055, Comp. Laws Utah 1917, which we have heretofore set out in full in this opinion lends some color to the contention so made on behalf of the plaintiffs. A consideration of the entire act, how-

ever, will not permit of the construction contended for by them. There is no language in the drainage law that requires the board of supervisors to view each tract of land and fix the benefits thereon more than once. When the board of county commissioners sit as a board of equalization they 'shall equalize and finally determine the assessments to be made and levied upon each tract of land'. If the assessments are finally fixed it cannot be said that they are to be fixed from year to year * * *."

UNCONSTITUTIONALITY OF ACT.

We give no consideration to the claims of the unconstitutionality of the act other than to say that we are satisfied that as the Board of Directors have interpreted it, it is not unconstitutional either in contravention of the State nor the Federal Constitutions. **Miami County v City of Dayton, 92 Oh St 215;** Orr v Allen, 245 Fed. Reporter, 486, 248 U. S. 35; **Reeves v Treasurer of Wood County et, 8 Oh St 333.**

Nor do we give consideration to the third and fourth defenses set up in the amended answer for the reason that the question of laches and the application of the statute of limitations are affirmative defenses which would arise only if we found that the plaintiff had stated or established a cause of action.

The prayer of the petition will be denied.

GEIGER, PJ., concurs.
BARNES, J., dissents.