[L. A. No. 19875. In Bank. Mar. 7, 1947.]

CARYL KROUSER et al., Petitioners, v. COUNTY OF SAN BERNARDINO et al., Respondents.

Burke, Hickson, Burke & Marshall and Daniel G. Marshall for Petitioners.

Albert E. Weller, County Counsel, for Respondents.

SHENK, J.—This is a proceeding in mandamus to compel the respondents, board of supervisors of the county of San Bernardino and its clerk, to accept for filing a petition for the formation of a municipal corporation signed by certain property owners in the area known as Barstow. The respondents filed an answer as a return to the alternative writ. There is no dispute as to the facts.

The petition for incorporation was presented to the board of supervisors on March 18, 1946, pursuant to the Municipal Corporations Act (Stats. 1883, p. 93, as amended; 2 Deering's Gen. Laws, Act 5233). Section 2 of that act reads

in part: "A petition signed by at least twenty-five per cent of the holders of title . . . to the lands situate within the limits of a proposed corporation which includes both subdivided and/or densely populated areas and farming and/or industrial areas representing twenty-five per cent of the value of the land included in said limits, as the value thereof is shown on the last equalized assessment roll of such county, shall first be presented to the board of supervisors of such county. For the purposes of this act only owners of land in fee and purchasers of land under written agreement shall be qualified to sign such petition. The petition shall set forth and particularly and accurately describe the proposed boundaries of such corporation. . . ." Other provisions of the section require that after the presentation of the petition at a regular meeting of the board of supervisors, the board shall require its clerk to ascertain whether the petition is subscribed by the requisite number of qualified signers, whether it correctly describes the boundaries of the proposed corporate area, and to make a report to the board within thirty days. If the report shows that the petition does not contain the signatures of a sufficient number of qualified signers, or that the boundaries are inaccurately described, the board is without jurisdiction to proceed. If the requirements as to the petition are complied with the board must direct the clerk to accept the petition for filing upon the payment of certain fees, and at its next regular meeting fix a time for a hearing on the petition, and direct the clerk to cause the petition and a notice of the time of hearing to be published for at least two weeks before the time fixed. At the hearing on the petition the board is authorized to establish the boundaries of the proposed municipality. The board must then give notice of an election to be held within the limits of the proposed corporation for the purpose of determining the question of incorporation and for the election of its officers.

After the presentation of the petition for incorporation here involved the board of supervisors directed its clerk to make his report in accordance with the provisions of section 2 of the act. The report of the clerk was presented to the board on April 15, 1946. It shows that the boundaries of the proposed municipality are accurately described in the petition; and that the number of qualified signers exceeds 25 per cent of the total number of landowners within the area on March 5,

1945. The report contains the following data concerning property values within the area as of March 5, 1945:

| | |
|---|---|
| Aggregate value of property within the area (exclusive of public utility property, exempt property and personal property).... | $ 688,585.00 |
| Aggregate value of public utility property ............................... | $ 986,780.00 |
| Aggregate value of assessed property exempt from tax ........................ | $ 119,200.00 |
| Total | $1,794,565.00 |
| Total value of property of signers........ | $ 199,730.00 |

The clerk reported his conclusions (a) that the total value of the land of qualified signers was in excess of 25 per cent of the aggregate value of the land in the proposed corporate area, if public utility property, exempt property, and personal property were excluded; and (b) that the total value of the land of qualified signers was less than 25 per cent of the aggregate value of the land proposed to be included in the corporate area, if public utility property and exempt property were included.

On the basis of the foregoing report, the board of supervisors found that the petition was not signed by the requisite number of qualified signers and that it had no jurisdiction to proceed further in the matter.

In the report of the clerk the words "property" (in connection with the detail of property values) and "land" (in stating conclusions (a) and (b) ), were used synonymously, that is, as inclusive of both land and improvements. Thereby both the clerk and the board adopted the view that, in calculating the values within the meaning of the act, the word "land" meant land and improvements and not land alone, and that it was necessary that the signers own 25 per cent in value of all land and improvements in the area before the board could proceed.

It is not disputed that in calculating values all land in the area which has been assessed must be included in determining the sufficiency of the petition. But the petitioners contend that the word "land" as used in section 2 of the act means land only, and not land and improvements. If that be the proper meaning of the word it is conceded by the respondents that the petition is sufficient. That is, had the clerk reported

the value of the land separately from the value of the improvements, the figures would show that the qualified signers on the petition own more than 25 per cent in value of all the land in the area, inclusive of exempt land and land devoted to public utility use.

Section 2 of article XIII of the Constitution of California provides that land, and the improvements thereon, shall be separately assessed. Title I, part 1, division second of the Civil Code treats of the Nature of Property. Section 657 included therein provides that property is either real (immovable), or personal (movable). Section 658 defines real property as "1. Land; 2. That which is affixed to land; 3. That which is incidental or appurtenant to land; 4. That which is immovable by law. . . ." Section 659 reads: "Land is the solid material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock, or other substance."

In accordance with the foregoing sections land is deemed to be something distinct from the buildings, fences, and other improvements placed thereon by man's work. Real property on the other hand, within the code definitions, is all-inclusive and contemplates both land and improvements; and the Constitution requires that the distinction be carried into the tax rolls for the purpose of equalizing separately the assessments on land and on improvements. (See, also, Rev. & Tax Code, §§ 103-105.)

The respondents rely on section 829 of the Civil Code as furnishing the key to the meaning of the word "land" in section 2 of the Municipal Corporation Act. The code section states that the owner of land in fee has the right to the surface and to everything permanently situated beneath or above it. The respondents argue that since the words "owners of land in fee" in section 2 plainly refer to those having title to real property, considered as land and improvements, the same meaning of land, as land and improvements, should be carried throughout the section. This meaning may be attributed to the word "land" in ascertaining the numerical percentage of owners of land in the area; but it does not follow that the word "land" was intended to include improvements in ascertaining the requisite land value percentage.

It is true that the word "land," both in legal and popular parlance, more frequently than not includes both land and

improvements. The use of the word "land" as synonymous with real property has become its historical, ordinary and accepted meaning in connection with title, ownership, conveyance or transfer by deed or inheritance, with the exercise of the right of eminent domain, with execution sales and redemption, with dower, and similar evidences of ownership or modes of transfer. (See Words and Phrases, vol. 24, perm. ed., pp. 134 et seq., and numerous cases cited; *Gibson* v. *Brockway*, 8 N.H. 465, 470 [31 Am.Dec. 200]; *Chicago, I. & K. R. Co.* v. *Knuffke*, 36 Kan. 367 [13 P. 582]; *Stauffer* v. *Cincinnati R. & M. R. Co.*, 33 Ind.App. 356 [70 N.E. 543]; *Lincoln Nat. Bank & Trust Co.* v. *Nathan*, 215 Ind. 178 [19 N.E.2d 243, 247]; *Lenfers* v. *Henke*, 73 Ill. 405, 408 [24 Am.Rep. 263]; *Swann* v. *Washington Southern Ry. Co.*, 108 Va. 282 [61 S.E. 750]; *Munson* v. *Wade*, 174 Ark. 880 [298 S.W. 25]; *Castle* v. *Castle*, (C.C.A. Hawaii), 267 F. 521, 523; *Saulsberry* v. *Maddix*, 125 F.2d 430, 433; *Sims* v. *Trinity Farm Const. Co.*, (Court of Civil Appeals of Texas) 28 S.W.2d 856; *Lorino* v. *Crawford Packing Co.*, (Court of Civil Appeals of Texas) 169 S.W.2d 235; *Whelan* v. *Johnston*, 192 Miss. 673 [6 So.2d 300].)

In assessing benefits under conservation district and similar statutes, it has been held that land is synonymous with real property and includes improvements. (*State* v. *Board of Directors of Miami Conservancy Dist.*, (Court of Appeals of Ohio) 39 N.E.2d 537.) In that case, however, the statutory definition of land included buildings and other improvements. The word "land" was held to include dwellings and other structures in assessing the cost of a street improvement (*Ex parte Hill*, 194 Ala. 559 [69 So. 598]), and for purposes of assessment in the organization of a drainage district (*Atchison T. & S. F. Ry.* v. *Drainage Dist. No. 1*, 133 Kan. 586 [1 P.2d 253, 82 A.L.R. 552]).

In *Delaney* v. *Lowery*, 25 Cal.2d 561, 571 [154 P.2d 674], this court referred to both meanings of the word "land," and quoted extensively from 42 American Jurisprudence, Property, section 14, in holding that oil lease interests were real property within the broader and all-inclusive meaning of the word "land."

*Southern Pacific Co.* v. *County of Riverside*, 35 Cal.App.2d 380 [95 P.2d 688], involved the assessment provisions of the Storm Water District Act of 1909 (Stats. 1909, p. 339, as amended) and the question whether the terms "land," "real

property," and "land or any improvements thereon" were interchangeable. In arriving at an affirmative answer, the District Court of Appeal relied in part on *In re Haines,* 195 Cal. 605, 613 [234 P. 883]. In the latter case it was stated that words or clauses may be enlarged or restricted to effectuate the intention or to harmonize them with other expressed provisions; that general language may be restrained where· to construe it in a broad sense would lead to absurdity; and that the particular inquiry is not as to the abstract force of the words or what they may comprehend, but the sense in which they were intended to be used as found in the act. (See, also, *In re Washer,* 200 Cal. 598, 604 [254 P. 951].)

In *Pasadena* v. *County of Los Angeles,* 182 Cal. 171, 175 [187 P. 418], it was said that the words "lands" or "improvements," in the absence of anything in the context of the statute to the contrary, were used as defined by the statutes in force at the time. To the same effect is *State M. B. & L. Assn.* v. *Los Angeles County,* 30 Cal.App.2d 383, 385 [86 P.2d 372]. In *Kauke* v. *Lindsay Unified School Dist.,* 46 Cal.App. 2d 176, 185 [115 P.2d 576], it was said with citation of authorities that there is no dearth of recent cases all enunciating the principle that where the statutory language is subject to two interpretations, it is the intention of the Legislature that must be given effect.

In the case of *Lightfoot* v. *Grove,* 5 Heisk. 473 (52 Tenn. 391), the all-inclusive meaning of the word "lands" as real property was rejected as being not in accordance with the intention of the Legislature.

In *Sinclair Refining Co.* v. *Burroughs,* 133 F.2d 536, it was held that the word "lands" as used in an Oklahoma statute was not synonymous with "real property." In that case the court had before it statutory definitions of "Real Property" and "Land" identical with those in our Civil Code. It was said at page 539, that having defined the terms "land" and "real property" it must follow in the absence of some controlling state decision that when the law making body of the state used one or the other of those terms, it used them in the sense in which it had defined them.

The word "land" used in section 2 of the Municipal Corporations Act should be interpreted in accordance with the legislative definition of section 659 of the Civil Code, as "the

solid material of the earth,'' unless it is clear that the Legislature intended the broader and all-inclusive meaning of land and improvements.

The requirements of section 2 that both numerical and geographic representation in land ownership be disclosed by the petition for incorporation gives the clue to the legislative intent. The requirement of geographic representation of ownership, as well as numerical representation, indicates the intent that numbers of owners alone should not control at least in the first instance. The language that all areas, urban, agricultural, and industrial, should be included, indicates an intent that the property in the district should speak on an equal basis. The only equal basis for control geographically is to require the land as such to be a deciding element. Therefore, unless the word "land" be given the legislative definition of section 659 of the Civil Code, that intent would be defeated. For, to ascribe to the word "land" the meaning invoked by the respondents, would in practical effect place the initial control of the question of incorporation in more densely populated sections where both numbers and real property wealth are usually concentrated. If it were not the intention to give a voice to the rural sections of the proposed corporate area by permitting the land to speak for or against the incorporation in the first instance, it would not have been necessary to include any land value quotient in the petition. The interpretation of the word "land" as defined by section 659 of the Civil Code carries into effect the legislative intent, while to give to it the interpretation invoked by the respondents would leave the requirement for land value representation without its intended meaning. It is clear therefore that the Legislature, in formulating section 2 of the Municipal Corporations Act, was mindful of and intended the statutory definition of the word "land."

Since the report of its clerk to the board of supervisors is incomplete because of a failure to show separately the value of the land as so defined, there is no proper basis in that report upon which the board may make its determination that the petition is sufficient; and it is the duty of the clerk to correct his report accordingly.

Let the peremptory writ issue directing the respondent clerk to correct his report to show the value of the land separately from the value of the improvements, and directing the

respondent board of supervisors and its clerk thereupon to proceed in accordance with the provisions of the Municipal Corporations Act and the views herein expressed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.