277 P.2d 293

TRI–BULLION CORPORATION, a corporation, Plaintiff-Appellant,

v.

AMERICAN SMELTING & REFINING COMPANY, a corporation, Defendant-Appellee.

No. 5795.

Supreme Court of New Mexico.

Nov. 29, 1954.

Hannett & Hannett and W. S. Linda-mood, Albuquerque, for appellant.

Shantz & Woodbury, Silver City, Ben C. Hill, Tucson, Ariz., for appellee.

LUJAN, Justice.

This is an appeal from a judgment entered in favor of the American Smelting and Refining Company, a corporation, defendant (appellee), dismissing the complaint of the Tri-Bullion Corporation, a corporation, plaintiff (appellant), with prejudice, and the plaintiff appeals.

The facts out of which the controversy arose are somewhat complicated, and will be stated in extenso.

On December 4, 1890, a patent was issued by the United States Government to the North Graphic Mining Company covering Lot 523-A, the property involved herein, and Lot No. 523-B, not a subject of this suit, and recorded January 3, 1891. On December 12, 1903, the patentee, North Graphic Mining Company, leased the following described property under a 99 year lease to one Cony T. Brown, which lease was recorded October 7, 1904. It reads, in part as follows:

"All that certain tract, piece and parcel of mining ground situate in the Magdalena Mining District, County of Socorro, Territory of New Mexico, known and described as follows, towit:

"The surface within the following described area that is to say: four hundred (400) feet off of the south end of the North Graphic Lode Mining Claim as the same is surveyed by the Government and described in the patent therefor, the said patent being Government Patent 523-A, that is to say, beginning at the southwest corner of the said mining claim as described in said patent, and running thence six hundred (600) feet to the southeast corner of the same, as therein described and thence along the east side line of said mining claim four hundred (400) feet, and thence from said last mentioned point in a line parallel with said south end line of said claim six hundred (600) feet to the west side line of said claim, and thence for a distance of four hundred (400) feet to the place of beginning." The lease further provides:

"It is further convenants by and between the parties hereto that the said party of the second part shall have the right to use the surface ground within the said above described area as dumping ground and for the erection thereon of buildings and improvements . . . the said party of the second part by virtue of this lease acquires no right to any of the mineral in said ground; * * *".

On March 29, 1904, Cony T. Brown assigned this lease to Fitch & Brown, a copartnership. On March 30, 1904, said copartnership assigned their lease to W. H. Cottingham, as Trustee. On November 8, 1904, the said Cottingham, as trustee, assigned said lease to Graphic Lead and Zinc Mining Company, a corporation, which was recorded on November 12, 1904. On December 9, 1905, said last corporation conveyed its interest in said lease to the Ozark Smelting and Mining Company, a corporation, said assignment was recorded January 25, 1906. On June 19, 1913, the Tri-Bullion Smelting and Development Company, a corporation, the predecessor in title to plaintiff herein, and Ozark Smelting and Mining Company, a corporation, a predecessor in title to the defendant herein, entered into an agreement for the purchase of stock of the North Graphic Mining Company, a corporation, and its assets, same was recorded December 10, 1913. At the time of this agreement the North Graphic Mining Corporation, the original patentee, was still the owner of the mining claim subject to the Cony T. Brown lease.

At the time of said agreement, no mention whatever was made therein concerning the south 400 feet of Extension No. 1, North Graphic Lode Mining Claim, designated as Lot 523–A, which property was leased to Cony T. Brown on December 12, 1903, and which lease was at the time of the agreement owned by Ozark Smelting and Mining Company, one of the parties to said agreement. On November 3, 1914, the North Graphic Mining Company, a corporation, conveyed said mining claim by warranty deed to Julian Dickinson, Receiver of North Graphic Mining Company, same was recorded November 6, 1914. No mention was made of a lease of the south 400 feet of said claim. On December 2, 1914, Julian Dickinson, Receiver of North Graphic Mining Company, conveyed said property to Howard Paschal, Trustee, reciting in said instrument that the same was made by virtue of a decree of the Circuit Court of Wayne County, Michigan, and in pursuance of the grant conferred by the deed to Dickinson, Receiver. This deed was recorded December 28, 1914.

Howard Paschal was President of the Tri-Bullion Smelting and Development Company, and he it was who made arrangement with the holders of a majority of the capital stock of North Graphic Mining

Company for a purchase of their stock prior to making of the above mentioned agreement, and who executed that agreement in behalf of his company.

On December 7, 1914, Howard Paschal, Trustee, by a deed conveyed the said mining claim, without mention of any lease of any nature, to the Tri-Bullion Smelting and Development Company and the Ozark Smelting and Mining Company, same was recorded December 28, 1914.

On December 30, 1927, the Tri-Bullion Smelting and Development Company conveyed all its interest in said mining claim to Tri-Bullion Corporation, a corporation, plaintiff herein. On January 1, 1916 the Ozark Smelting and Mining Company, a corporation, conveyed its interest to the Sherwin-Williams Company, said deed was recorded December 13, 1916. On December 30, 1927, the Tri-Bullion Smelting and Development Company conveyed by deed all its interest in the North Graphic Group of Mines to the Tri-Bullion Corporation. On April 9, 1943, the Sherwin-Williams Company, by a mining deed, conveyed all its interest in the property to the American Smelting and Refining Company, defendant herein, which deed was recorded April 14, 1943. On April 25, 1944, Sherwin-Williams Company, executed a correction deed to American Smelting and Refining Company, conveying any interest in the surface ground in the property in question.

This action was filed on January 29, 1951, by the plaintiff where it alleged:

"1. That the plaintiff and defendant were at all times material to this cause the owners of a certain mining claim as tenants in common, to-wit: (description of property omitted) on which there was situated a large dump of tailings which were owned by the plaintiff and defendants as tenants in common.

"2. That between the 24th day of April, 1944, and the 1st day of June, 1950, the defendant converted to its own use upwards of fifteen thousand tons of said dump and tailing which contained valuable minerals, and smelted and marketed said minerals, which said minerals, as plaintiff is informed and verily believes, were of the value of upwards of $50,000, one-half of which was the property of plaintiff.

"Wherefore, plaintiff demands judgment against the defendant in the sum of $25,000   *   *   *."

The defendant answered as follows:

"Defendant admits that it was and is the owner of an undivided one-half interest in and to that certain mining claim or premises known as Extension No. 1, North Graphic lode mining claim, designated by the Surveyor General as Lot No. 523A, except as to the surface of the following described area of said claim, to-wit:

400 feet off of the South end of said claim, beginning at the Southwest corner of said claim and running thence 600 feet to the Southeast corner of the same, and thence along the East side line of said claim 400 feet and thence from said last mentioned point, on a line parallel with the South end line of said claim 600 feet to the West side line of said claim, and thence 400 feet to the place of beginning;

which said surface and all rights therein were and are the sole property of defendant.

"2. Defendant denies that plaintiff was or is the owner of any interest in and to said Extension No. 1, North Graphic lode mining claim.

"3. Defendant admits that upon said area of said claim above described there was situated a large dump, but denies that the same was owned by plaintiff and defendant as tenants in common, and alleges that it was the sole property of defendant."

At the conclusion of the trial the court made many findings of fact and conclusions of law, among which are the following:

"1. Plaintiff and defendant are the owners as tenants in common of the Extension No. 1 North Graphic Lode Mining Claim, subject to the rights of

defendant as lessee under the terms of lease of December 12, 1903, a copy. of which is attached to defendant's second amended answer and is shown in the abstract in evidence. Plaintiff's Exhibit 1." (Emphasis supplied.)

"31. At all times since the making of the lease of December 12, 1903, the area leased thereby has been held and possessed and controlled by a lessee, that is the original lessee or his successive assignees; and the dump on such area has been continuously in the possession of such lessee and under his or its control and has not been abandoned by the lessee."

"32. There was no conveyance or assignment of said leasehold interest to the plaintiff."

The court concluded as a matter of Law:

"2. The lease of December 12, 1903, to Cony T. Brown was not extinguished by a merger of said lease into the agreement of June 19, 1913, between Tri-Bullion Smelting and Mining Company and the deed dated December 7, 1914, from Howard Paschal, Trustee, to Tri-Bullion Smelting and Development Company and Ozark Smelting and Mining Company, and the rights of said Cony T. Brown thereunder are owned by the defend-

ant herein and the same and said lease are in full force and effect.

"5. Plaintiff and defendant were tenants in common of that mining property designated as Lot 523–A, as to the mining claim itself, but subject to said lease of December 12, 1903, under which the surface rights thereby granted are the sole and separate property and interest of the defendant assignee-lessee.

"6. There was no conveyance or assignment of the leasehold interest, or any part therein, to the plaintiff; and there was no abandonment of the dump on the leased premises by the lessee, in whose possession and control it was at all times material hereto."

Many errors are assigned which are argued under four points. Under point one plaintiff in his brief says: "Simply stated, it is the position of the appellant that the Cony T. Brown lease was extinguished and merged in the agreement of December 19, 1913, and the deed of December 7, 1914, and the leasehold estate was absorbed in the conveyance to the grantees under said deed, one of whom also held the lease." Plaintiff's counsel erroneously refers to the agreement of *December* 19, 1913, throughout his brief. No doubt he intended to refer to the agreement of June 19, 1913.

We are cited a large number of decisions and statements from text writers on the question of merger, and we agree that as a general rule when the same party becomes the owner of both a large and a small estate in the same property, they merge and the smaller estate becomes extinct.

The agreement in question declared, in part, as follows:

"Whereas, on or about March 22, 1912, Mr. Howard Paschal, representing the party of the first part (Tri-Bullion Smelting and Development Company) entered into an agreement with the stockholders owning and holding three-quarters of the capital stock of the North Graphic Mining Company, a corporation organized under the laws of Michigan, having its principal office in Erie, Penn., for the purchase of the capital stock of the North Graphic Mining Company, * * *.

"Whereas, the partoes desire a definite understanding with reference to *their respective* interest in said Mining District;

"Now Therefore, for a valuable consideration in hand paid, receipt whereof is hereby acknowledged, the parties hereto mutually agree as follows:

"2. It is hereby *expressly* agreed that all boundary lines now existing between the properties owned by the party of the second part and the properties of the party of the first part shall in law, become end lines and the parties hereto expressly waive all apex rights so far as either party hereto is concerned, it being understood that the said party of the first part, prior to the execution of the contract by said Paschal, March 22, 1912, had acquired under contract the so-called Silver Bell and Ozark Mining claims situated in said Mining District, and has since acquired full title to said mining Claims and *in* entitled to all rights and interest in said mining claims, said claims to be *included* in the properties of said party of the first part to which apex rights are waived.

"3. It is further stipulated and agreed that the purchase of the interest controlled by said North Graphic Mining Company by the parties hereto, each taking an undivided one-half interest, shall in no way affect the title or rights covered by the said mining claim known as the Silver Bell and Ozark, held and owned by said party of the first part; and should any conflict arise with reference to the boundary lines of the so-called J.

S. Richards claim confilicting with the boundary lines of the said Ozark claim, the same shall be waived, recognizing the prior title of said party of the first part to the Ozark Mining claim as located and acquired by said party to the first part.

"4. It is further stipulated and agree— that the respective parties hereto shall grant and hereby lease, in consideration of One Dollar, the right to construct and maintain tramway, rights of way and st*org*e privileges on the surface of the lands *owned* in said Mining District by either party, so long as it does not interfere with the operations of their *respectite properties.*

"7. Whereas, the parties hereto are purchasing the capital stock herein referred to, partially as a means of protection to the interest *now held* by the parties hereto, *severally,* and

"8. Whereas, as a part of the consideration of the buying of this stock, and the *reason* therefor, is protection to interests *now held* by the parties hereto.

"12. It being the *purpose and intention* of this contract that at no time, under no circumstances or conditions, is either party hereto, either directly or indirectly, by the purchase of other stock, or uniting with other stock-

holders, to control, manage, or operate the affairs of the corporation, *it being deemed by all the parties hereto that such agreement is necessary in order to protect the separate holdings of the parties hereto, and this contract is made for this reason and no other."* (Emphasis supplied.)

At the time of the making of the agreement said corporations were not tenants in common in any property whatsoever. The Ozark Smelting and Mining Company was the sole owner of the lease from North Graphic Company to Cony T. Brown, the original lessee, it was a part of its separate holdings, and was an interest then held in severalty. The proposed purchase was to acquire the interest controlled by North Graphic Company, which excluded the leasehold, since it was not owned and controlled by it.

In this connection the rule is that one cannot sell and convey to another a greater interest in real estate than he himself possesses. Gregory v. Pribbeno, 143 Neb. 379, 9 N.W.2d 485. During the life of a lease the lessee holds an outstanding leasehold estate in the premises, which for all practical purposes is equivalent to absolute ownership. Baker v. Clifford-Mathew Inv. Co., 99 Fla. 1229, 128 So. 827. The estate of the lessor during such time is limited to his reversionary interest which

ripens into perfect title at the expiration of the lease. Rogers v. Martin, 87 Fla. 204, 99 So. 551.

In the instant case we are of the opinion and so hold that there was no merger because the same party never became the owner of the larger (fee) and of the smaller (leasehold) estates in this property. We deem this situation similar to the following: A, the owner of a building, leases office space to B, the tenant; B, the tenant, and C, a third party, purchase A's interest as owner of the building. The doctrine of merger does not apply to kill B's lease. 51 C.J.S., Landlord and Tenant, § 257, p. 894; Patterson v. United Natural Gas Co., 263 Pa. 21, 105 A. 828; Vucinich v. Gordon, 51 Cal.App.2d 434, 124 P.2d 868.

Moreover, it has been held that mergers are not favored in law or equity. In Mobley v. Harkins, 14 Wash.2d 276, 128 P.2d 289, 291, 143 A.L.R. 88, the court said:

"It was an inflexible rule at common law that a merger always took place when a greater and a lesser estate met in the ownership of the same person without any intermediate estate, but modernly the doctrine of merger is not favored either at law or in equity. Consequently, the courts will not compel a merger of estates where the party in whom the two interests are

vested does not intend such a merger to take place or where it would be inimical to the interest of the party. in whom the several estates have united". (Citing cases.)

Under the facts and the law, we hold that the lease .was not extinguished but remained in force.

Counsel for plaintiff further contends that the ore dump located on that portion of Lot 523–A leased to Cony T. Brown was appurtenant to the land on which it was located and that it thus constituted real property and never passed under the lease to the said Cony T. Brown.

■ The general rule, in this connection, is stated in 58 C.J.S., Mines and Minerals, § 133, p. 213, as follows:

"Dumps and tailings. In the absence of an ·agreement to the contrary, material removed from a mine and dumped or placed on the land of another will be regarded as appurtenant to the land on which it is dumped, but the owner of the land on which it is dumped and the owner of the dump may agree that it shall be regarded as personalty." See also London Extension Mining Co. v. Ellis, 10 Cir., 134 F.2d 405; Manson v. Dayton, 10 Cir., 153 F. 258.

The plaintiff did not prove, or attempt to prove, that the ore dump was placed on the mining claim at the time the lease was entered into with Cony T. Brown. An examination of the lease convinces us that no reasonable inference can be drawn therefrom that the dump might have been placed on the surface of Lot 523–A at the time the lease was executed and delivered to the lessee. The very purpose of the lease was to obtain "dumping ground," and by its terms granted the lessee the right to use the surface area of said lot as a dumping ground.

The court found:

"22. On the south 400 feet of Lot 523–A, being the portion leased to Cony T. Brown by North Graphic Mining Company on December 12, 1903, for 99 years, there existed prior to 1947 an ore dump of undetermined origin and undetermined duration.

"Said lease expressly provided that its lessee should have the right to use the surface of said area 'as dumping ground.' From the evidence in this case and every reasonable inference that can be drawn therefrom, no finding can be made or supported that said dump existed prior to the making of said lease, nor can any finding be made or supported that said dump materials came from any part of the mining claim, Lot 523–A, or any property of the plaintiff or. its predecessors in title. A more reasonable inference would be

that the dump was put there by the lessees who leased and held the surface rights for that purpose, and that it came from claims they had or controlled. But under the evidence here any finding on the matter would be speculation."

We are of the opinion that it never was intended by North Graphic Mining Company and Cony T. Brown, lessee, that the dump placed on the said lot should become appurtenant to the land. Here the provisions in the lease gave the lessee the right to use the surface area of the mining claim as a dumping ground. This right and other provisions in the lease, all considered together indicated an intent and understanding that the dump should not be considered a part of the mining claim.

The evidence was documentary and all presumptions are in favor of the judgment, the evidence is sufficient to support the findings and conclusions made by the court.

Having concluded as we have it becomes unnecessary to consider the other questions raised in the briefs. The judgment is affirmed.

It is so ordered.

McGHEE, C. J., and SADLER, COMPTON, and SEYMOUR, JJ., concur.